**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-01435-NYW

V.L.V.,[1]

Plaintiff,

v.

FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This civil action arises under Title II of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED** for an immediate award of benefits.

**BACKGROUND**

In this case, Plaintiff V.L.V. challenges the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"). *See generally* [Doc. 10]. Plaintiff filed her application for DIB on January 21, 2014, alleging a disability onset date of May 23, 2012. [Doc. 9-5 at 160].[2] She alleged that she is disabled due to the following

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

[2] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page. For

conditions: lower back herniation/bulging discs; arthritis in knees, lower back, and neck; bulging/herniated disc in neck; tingling, numbness, and weakness in extremities; nerve damage; dizziness/headaches; high blood pressure; depression; anxiety; inability to sit, stand, or walk for long periods of time; and inability to twist, turn, or bend forward. [Doc. 9-3 at 62]. The Social Security Administration denied Plaintiff's claim for benefits in March 2014. [*Id.* at 67]. After a hearing before Administrative Law Judge (or "ALJ") William Musseman, ALJ Musseman issued an unfavorable decision affirming the denial of benefits on March 30, 2016. [Doc. 9-2 at 30].

V.L.V. appealed ALJ Musseman's decision to the United States District Court for the District of Colorado. [Doc. 9-9 at 716–17]. In 2018, the Honorable Lewis T. Babcock reversed and remanded the Commissioner's decision for further proceedings. [*Id.* at 719–29]; *see also* [*V.L.V.*] *v. Commissioner*, No. 17-cv-01360-LTB, ECF No. 22 (D. Colo. May 17, 2018). ALJ Musseman held another hearing, *see* [Doc. 9-8 at 704–14], and issued another unfavorable decision on July 30, 2019, [*id.* at 684–96]. After the Appeals Council denied review, [*id.* at 674–77], Plaintiff appealed to the federal district court again. On appeal, the Honorable Robert E. Blackburn granted the Commissioner's unopposed motion for remand, reversed ALJ Musseman's decision, and remanded the case for further proceedings. [Doc. 9-15 at 1398–99]; *see also* [*V.L.V.*] *v. Commissioner*, No. 20-cv-00697-REB, ECF No. 21 (D. Colo. Nov. 17, 2020).

---

all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

After this second remand, the case was reassigned to ALJ Debra L. Boudreau. *See* [Doc. 9-15 at 1404].[3] After a hearing, ALJ Boudreau issued a third unfavorable decision on March 23, 2022. [*Id.* at 1410–23]. Plaintiff appealed to the Appeals Council, which "assumed jurisdiction of th[e] case and again remand[ed] the case to" the ALJ for further proceedings on December 15, 2022. [*Id.* at 1435–36].

After another hearing, the ALJ Boudreau issued a fourth unfavorable decision on January 4, 2024. [Doc. 9-14 at 1284–97]. In her decision, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2013 and that Plaintiff had not engaged in substantial gainful activity from the disability onset date to her date last insured. [*Id.* at 1286–87]. The ALJ determined that Plaintiff has the following severe impairments "[t]hrough the date last insured": left knee degenerative joint disease and obesity. [*Id.* at 1287]. The ALJ determined that these impairments "result in functional limitations that more than minimally affect [Plaintiff's] ability to perform basic work-related functions" but also concluded that, "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments" in the Social Security Regulations. [*Id.* at 1289].

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but with the following restrictions:

> the claimant has the ability to occasionally lift and/or carry twenty pounds, and she can frequently lift and/or carry about ten pounds. She can stand and/or walk for about six hours out of an eight-hour workday. She can sit for about six hours out of an eight-hour workday. She should avoid work on ladders, ropes, and scaffolds. She can occasionally climb stairs and ramps; frequently balance and stoop; and occasionally kneel, crouch, and crawl.

[3] When the Court refers to "the ALJ" in this Order, the Court refers to ALJ Boudreau unless otherwise noted.

> The claimant should avoid work at unprotected heights or in close proximity to dangerous moving machinery.

[*Id.* at 1289–90]. The ALJ determined that Plaintiff had no past relevant work, [*id.* at 1295], but also found that "[t]hrough the date last insured, . . . there were jobs that existed in significant numbers in the national economy that the claimant could have performed," [*id.* at 1296]. As a result, the ALJ concluded that Plaintiff was not disabled "at any time from May 23, 2012, the alleged onset date, through March 31, 2013, the date last insured." [*Id.* at 1297].

In February 2024, Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied review on March 10, 2025. [*Id.* at 1274–77]. This rendered the ALJ's decision the final decision of the Commissioner. On May 7, 2025, Plaintiff sought judicial review of the Commissioner's decision in this District. [Doc. 1].

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not reached retirement age, have filed an application for DIB, and are under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that they were disabled prior to their date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

An individual is disabled only if their "physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). When

a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 423(d)(2)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its inquiry to whether it is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," *Flaherty*, 515 F.3d at 1070 (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Remand is also warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

### I. The ALJ's Decision

V.L.V. raises four points of error in the ALJ's decision: (1) the ALJ's rejection of certain opinions was not supported by substantial evidence; [Doc. 10 at 12–16]; (2) the ALJ did not follow the required two-step process when she weighed the opinions of Dr. Douglas Hess, [*id.* at 16–19]; (3) the ALJ's reasons for rejecting the opinions of Dr. Jeff Hansen are not supported by substantial evidence, [*id.* at 19–25]; and (4) the ALJ improperly failed to identify the evidentiary basis for the limitations included in Plaintiff's RFC, [*id.* at 25–27]. The Court finds the second argument dispositive.

Plaintiff was treated by Dr. Hess from December 2013 to July 2015, [Doc. 9-7 at 378–80, 388–413, 492–96, 522–25], and by nurse practitioner Dawn Evert ("Ms. Evert") from January 2014 to December 2015, [*id.* at 421–24, 497–511, 641–54]. In April 2014,

Ms. Evert completed a form titled "Medical Opinion Regarding Ability to Do Work-Related Activities (Physical)" in which she opined that Plaintiff's maximum ability to lift and carry on an occasional and a frequent basis was less than ten pounds. [Doc. 9-7 at 440]. She also opined that Plaintiff could stand, walk, and sit for fewer than two hours each day and could sit and stand for 30 minutes before needing to change positions. [*Id.*]. She also stated that Plaintiff must lie down two times per day at unpredictable intervals. [*Id.* at 441]. The explanation given for these restrictions was "[cervical spine/lumbar spine] [degenerative disc disease] & extremity weakness, numbness." [*Id.*]. In July 2015, Dr. Hess filled out a form that asked if he "agree[d] with Ms. Evert's opined limitations" and he checked "Yes." [*Id.* at 518].

The ALJ gave Ms. Evert's opinions little or no weight[4] and Dr. Hess's opinions no weight. She stated as follows:

> The opinions of Ms. Evert are given little weight. There is no medical evidence to support these findings from either Ms. Evert or the accompanying doctor, Douglas Hess, M.D. The very short period at issue does not establish the claimant's abilities as limited. Specifically, the claimant admitted she could lift up to ten pounds. She admitted to her treatment provider that her pain decreased with rest, which does not support the sitting restrictions noted. She told her doctors that her pain increased when climbing or descending stairs or squatting. She never mentioned to her treatment providers through the date last insured that she could only sit or stand for thirty minutes or walk fifteen minutes. Although there were abnormalities upon imaging, the claimant had only mild weakness and a slightly antalgic gait even shortly after the date last insured, which suggests it was not worse than this through the date last insured. Her treatment was conservative through the date last insured, consisting of steroids, bracing, and limited physical therapy. In light of this, the limitations described by Ms. Evert and Dr. Hess are unsupported through the date last insured and not persuasive. Thus, they are granted no weight.

---

[4] The ALJ first stated that Ms. Evert's opinions were given "little weight," but later in that same paragraph, she also stated that they were granted "no weight." [Doc. 9-14 at 1293].

[Doc. 9-14 at 1293 (citations omitted)]. Plaintiff argues that the ALJ erred in her assessment of Dr. Hess's opinions because she did not conduct the two-step analysis required for evaluating treating sources. [Doc. 10 at 16–19].

Because Plaintiff's application was filed in 2012, 20 C.F.R. § 404.1527 governs.[5] "Under [the old] Social Security Administration regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to 'controlling weight'" if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the claimant's] case record." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(c)(2)).[6] "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To make this determination, the ALJ decides "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996)). If the opinion is so supported, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.*

But a finding that a treating source's opinion is not supported by diagnostic techniques or is inconsistent with other evidence does not mean that the opinion must be rejected. *Id.* (citing SSR 96-2p, 1996 WL 374188, at *4). "Even if a treating opinion is not given controlling weight, it is still entitled to deference." *Krauser v. Astrue*, 638

---

[5] 20 C.F.R. § 1527 governs cases filed before March 27, 2017. For claims filed after that date, the standards set out in 20 C.F.R. § 1520c apply.

[6] The *Doyal* court quoted 20 C.F.R. § 416.927<u>(d)(2)</u>, *see Doyal*, 331 F.3d at 762, but in 2012, the regulation was amended to move this language to § 416.927<u>(c)(2)</u>, where it remains, *see* 20 C.F.R. § 416.927(c)(2) (2017).

F.3d 1324, 1330 (10th Cir. 2011). "[A]t the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in" § 404.1527. *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). "[I]f the ALJ rejects the opinion completely, [s]he must then give 'specific, legitimate reasons' for doing so." *Id.* (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

Plaintiff argues that Dr. Hess is a treating physician and the ALJ erred by not following this framework in her evaluation of his opinion. [Doc. 10 at 16]. She notes that the ALJ "did not even acknowledge that Dr. Hess was a treating physician," let alone address the factors relevant to the assignment of weight to his opinion. [*Id.*].

The Commissioner responds that "the ALJ did not find that Dr. Hess was a treating physician" and suggests that Dr. Hess should not be considered a treating physician because "he had only seen Plaintiff for two office visits (and some injection procedures) at the time he gave his opinion." [Doc. 12 at 12–13]. The Commissioner acknowledges that the ALJ's opinion is unclear, but states that it is "reasonably clear" that the ALJ concluded that Dr. Hess's opinion was not entitled to controlling weight. [*Id.* at 13].

Both Parties are correct that the ALJ did not clearly find that Dr. Hess was a treating source. *See* [Doc. 9-14 at 1293]. But just the same, she made no conclusive

ruling that Dr. Hess was *not* a treating physician, either. *See* [*id.*]. Without an express indication about how the ALJ considered Dr. Hess's opinion, this Court is left to guess what framework is applicable to Dr. Hess's opinions. In other words, the Court is not able to "follow the adjudicator's reasoning in conducting [its] review" to determine whether the correct legal standards have been applied. *Keyes-Zachary*, 695 F.3d at 1166; *see also Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1284 (D. Kan. 2011) ("The issue whether Dr. Kimball is a treating source is determinative of whether the ALJ properly evaluated the medical opinions, because the regulations provide a particular procedure to be used in evaluating the opinions of treating source physicians."); *Maricle v. Commissioner*, No. 3:20-cv-00149-DMB-JMV, 2022 WL 966830, at *4 (N.D. Miss. Mar. 30, 2022) ("Because it is unclear whether the ALJ considered Dr. Cole to be a treating source, this Court cannot determine whether the ALJ applied the correct legal standard.").

The Commissioner does not argue that this Court can determine, in the first instance, whether Dr. Hess is a treating source, *see* [Doc. 12], and the Court declines to make such a fact-based conclusion as a court of review, *see Pratt*, 803 F. Supp. 2d at 1284 (finding that this determination "is for the Commissioner to make in the first instance"); *Maricle*, 2022 WL 966830, at *4 ("[I]t is for the ALJ to determine, on remand, whether Dr. Cole was a treating source.") And in similar circumstances, courts have found remand appropriate. *See Pratt*, 803 F. Supp. 2d at 1284 (finding error where "the ALJ never addressed or stated whether he considered [a doctor] to be a treating source"); *Gibson v. Astrue*, No. 09-cv-02423-JWL, 2011 WL 98293, at *6 (D. Kan. Jan. 12, 2011) (remanding where the ALJ "did not state that he had considered [a doctor] to

be a treating physician" even though the treatment relationship "encompassed at least seven months and reflects more than a single examination of" the claimant); *Maricle*, 2022 WL 966830, at *4 (remanding case where the ALJ did not say whether doctor was a treating source and the court was unable to determine if correct legal standard applied).

The Commissioner still insists that the ALJ committed no error because she made it "reasonably clear" that she did not afford Dr. Hess's opinion controlling weight. [Doc. 12 at 13]. But even assuming that the ALJ did consider Dr. Hess to be a treating source, she was not entitled to outright reject his opinions simply because they were not entitled to controlling weight. *Watkins*, 350 F.3d at 1300; *Krauser*, 638 F.3d at 1330. Rather, a treating source's opinions are still entitled to deference, and the ALJ must "give good reasons, tied to the factors specified in [20 C.F.R. § 404.1527(c)(2)], for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id.* The Commissioner makes no argument that the ALJ complied with this requirement. *See* [Doc. 12 at 13].

The ALJ gave Dr. Hess's opinions (and Ms. Evert's corresponding opinions) no weight, and the Court finds that the ALJ did not give good reasons, tied to the § 404.1527 factors, for outright rejecting Dr. Hess's opinions. In her explanation, she stated that Ms. Evert's and Dr. Hess's limitation opinions were "unsupported" because they did not align with some Plaintiff's subjective reports and certain imaging and because Plaintiff "never mentioned to her treatment providers . . . that she could only sit or stand for thirty minutes or walk fifteen minutes." [Doc. 9-14 at 1293]. The Court construes this as a determination that Dr. Hess's opinions lacked consistency with the record as a whole, which is indeed one of the six factors that must be considered in assigning weight to

Dr. Hess's opinions. *See* 20 C.F.R. § 404.1527(c)(4). But there is no indication that the ALJ considered other required factors before assigning the opinions no weight. She did not clearly consider, for example, the nature or length of the treating relationship, the kind of treatment provided or testing performed, or Dr. Hess's specialty (if any). Although consistency "might prove determinative, that can only be decided after consideration of the other factors." *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009).

Although the ALJ is not required to discuss all of the factors, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), she must still consider them, *see* SSR 96-2p, 1996 WL 374188, at *2 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 [C.F.R. §] 404.1527[.]" (emphasis added)). And her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quotation omitted). Because the ALJ provided no indication that she considered all of the required factors, her opinion is not sufficiently specific to clearly set out her reasons for giving Dr. Hess's opinions no weight.[7] *Andersen*, 319 F. App'x at 721–22 (remanding where the ALJ "failed to satisfy [the court] that all of the [required] factors were properly considered and that the apparent rationale for largely disregarding [the] opinions [was] sufficient" (emphasis omitted)).[8]

[7] On appeal, the Commissioner does discuss the length and nature of Dr. Hess's treating relationship with Plaintiff in arguing that Dr. Hess should not be considered a treating source. *See* [Doc. 12 at 12–13]. The Court, however, cannot rely on the Commissioner's "post hoc argument supplying possible reasons for the ALJ's . . . rejection of" Dr. Hess's opinions. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

[8] Even if the ALJ did conclude that Dr. Hess is not a treating physician—which is not clear from her decision—she was still required to consider the factors in § 404.1527 and provide "specific, legitimate reasons for rejecting" his opinions. *Doyal*, 331 F.3d at 764; *see also McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) ("[T]he

The ALJ's lack of clear explanation is especially troubling when compared against ALJ Musseman's unfavorable decision from 2019, as ALJ Boudreau's analysis of Dr. Hess's and Ms. Evert's opinions appears to have been directly copied from ALJ Musseman's decision. *Compare* [Doc. 9-8 at 691], *with* [Doc. 9-14 at 1293].[9] Stated differently, instead of engaging in an independent analysis and weighing of Dr. Hess's opinions after the case was reassigned, it appears that ALJ Boudreau simply adopted another ALJ's prior determinations. While the Court does not conclude that this is error in and of itself, it provides additional support for the Court's conclusion that the ALJ did not provide fully consider all of the factors required by § 404.1527. *Cf. Holly M. v. Dudek*, No. 23-cv-17007, 2025 WL 933875, at *2 (N.D. Ill. Mar. 27, 2025) (finding error where the ALJ copied earlier ALJ's decision nearly verbatim, as "[n]o reasonable mind would accept that [the] ALJ . . . engaged in any of the analysis that underlie[d] 'her' conclusions").[10]

Because the ALJ never addressed whether Dr. Hess is considered a treating source and—regardless of whether Dr. Hess is or is not considered a treating source—

explanation requirement applies equally to the opinions of treating physicians and non-treating physicians."). As explained above, the ALJ did not do so.

[9] To be precise, the Court notes that ALJ Boudreau's first decision also repeats, nearly verbatim, the explanation provided by ALJ Musseman. *Compare* [Doc. 9-8 at 691], *with* [Doc. 9-15 at 1420]. After the Appeals Council remanded the case for the third time, ALJ Boudreau's second opinion again repeats ALJ Musseman's analysis. *Compare* [Doc. 9-8 at 691], *with* [Doc. 9-14 at 1293].

[10] After a remand, the ALJ is required to "take any action that is ordered by the Appeals Council" and "may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). An ALJ is not bound by earlier decisions, as this "would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987)

did not provide an adequate explanation for outright rejecting his opinions, remand is required. *Krauser*, 638 F.3d at 1330; *Pratt*, 803 F. Supp. 2d at 1284; *Maricle*, 2022 WL 966830, at *4.

## II. Appropriate Remedy

V.L.V. argues that the Court should order an immediate award of benefits instead of remanding the case for yet another hearing and administrative decision. [Doc. 10 at 27–28]. She notes that this case has been pending since 2012, with four administrative hearings and decisions and two (now three) federal-court remands. [*Id.* at 28]. The Commissioner responds that the "pendency of this case, alone, is not enough to justify an award of disability benefits" and that "the appropriate remedy [is] a remand for additional proceedings." [Doc. 12 at 21]. He argues that an award of benefits is "appropriate only when . . . the record 'fully supports' that a claimant is disabled 'as a matter of law'" and when the facts "conclusively demonstrate that the claimant is in fact disabled under the Act." [*Id.* (first quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989), then citing *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019))].

The Court has discretion to immediately award benefits instead of remanding for further proceedings. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). "Some of the relevant factors [courts] consider are the length of time the matter has been pending" and "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Id.* (cleaned up).

As an initial matter, the Court notes that the Commissioner's argument relies on an inaccurate framing of the authority upon which he relies. In *Sorenson*, the Tenth Circuit did *not* hold that payment of benefits is "only" appropriate when the record "fully supports" that the claimant is disabled. Rather, in that case, the Tenth Circuit simply noted that the record *in that case* fully supported a determination that the plaintiff was disabled. *See Sorenson*, 888 F.2d at 713. In addition, the Court is not persuaded by the Commissioner's reliance on a case applying Rule 50 standards for judgment as a matter of law, as that rule is not applicable in this case.

Contrary to the Commissioner's argument, district courts have concluded that they have "discretion to remand either for further fact-finding or for an immediate award of benefits without first finding that the record conclusively supports a finding of disability." *Paul M. R. v. Bisignano*, No. 1:25-cv-01071-JMR, 2026 WL 1431089, at *5 (D.N.M. May 21, 2026) (collecting cases); *cf. Huffman v. Astrue*, 290 F. App'x 87, 90 (10th Cir. 2008) (the Tenth Circuit awarding benefits based on delay, without expressly considering whether additional fact-finding is appropriate or whether the record conclusively determined that the claimant was disabled). So while the Court may, in its discretion, consider whether additional fact-finding would serve a useful purpose, *Salazar*, 468 F.3d at 626, the Court is not constrained to award benefits only if it is conclusive from the record that Plaintiff is disabled.

Considering first the length of time this matter has been pending, *id.*, including the number of administrative law judges who have considered the relevant issues, and the amount of resources the district court and the Appeals Council have devoted to analyzing the work of such administrative law judges, the Court finds that this factor weighs heavily

in favor of an immediate award of benefits. Plaintiff applied for DIB in January 2014, when she was 44 years old. She is now almost 56 years old. *See* [Doc. 9-5 at 160 (listing Plaintiff's birthday)]. Her application has been in limbo for over 12 years, during which time Plaintiff has been through four administrative hearings and the Commissioner has issued four administrative decisions. This order will mark the third remand from a court in this District—from three different judicial officers—in addition to another remand from the Appeals Council. The significant amount of time this case has been pending, coupled with the number of administrative proceedings conducted thus far, weighs in favor of awarding benefits. *See Romero v. Kijakazi*, No. 22-cv-01237-MDB, 2023 WL 4545158, at *5 (D. Colo. July 7, 2023) ("[T]hirteen years and four appeals after Plaintiff first sought disability benefits, this Court is unwilling to again extend Plaintiff's wait while the Commissioner again attempts to satisfy its evidentiary burden; Plaintiff is entitled to an immediate award of benefits."); *Nurre v. Saul*, No. 19-cv-03429-CMA, 2021 WL 1037893, at *4 (D. Colo. Mar. 18, 2021) ("Given that more than a decade has passed since Plaintiff first applied for disability benefits, the Court finds that further proceedings would be inappropriate and unfairly prejudicial to Plaintiff."); *Huffman*, 290 F. App'x at 89–90 (remanding for an immediate award of benefits where six years had passed since the claimant applied for benefits and the case had already been reversed and remanded once).

Turning to the need for additional fact finding, *Salazar*, 468 F.3d at 626, the Commissioner argues that the errors identified by Plaintiff "could be remedied with additional fact-finding, such as with respect to opinion evidence and RFC issues," and that "[m]ore vocational expert testimony could also be needed as to any additional or

different RFC limitations," [Doc. 12 at 23]. This vague argument does not convince the Court that any additional fact finding would serve any useful purpose. In the first appeal, Judge Babcock remanded after concluding that the ALJ committed legal error by not considering medical opinions issued after the date last insured. *See* [*V.L.V.*] *v. Commissioner*, No. 17-cv-01360, ECF No. 22 at 10 (D. Colo. May 17, 2018). In so doing, Judge Babcock also instructed the ALJ to address other points of error Plaintiff had raised. *Id.* After the case was appealed again and remanded again based on the Commissioner's request, the Appeals Council stated that ALJ Musseman's second decision failed to comply with Judge Babcock's order. [Doc. 9-15 at 1402–03]. Specifically, the Appeals Council determined that the decision did not contain a sufficient narrative discussion regarding the limitations contained in Plaintiff's RFC. [*Id.* at 1403]. After ALJ Boudreau issued a third unfavorable decision, the Appeals Council remanded again upon concluding that her decision did not "comply fully with" its remand order because she did not sufficiently address the basis for the RFC determination or explain why the entirety of Dr. Hansen's opinions were rejected. [*Id.* at 1435]. And now, the Court has again concluded that remand would be appropriate based on the ALJ's failure to clearly explain her reasons for rejecting Dr. Hess's opinions.

Because "the Commissioner has repeatedly failed to conduct and/or articulate the correct analysis of the evidence already in the record despite clear instructions to do so," *Paul M. R.*, 2026 WL 1431089, at *6, the history of this case does not instill confidence that a more developed factual record would serve any useful purpose, especially as time continues to pass from the date last insured. The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and

gathers evidence to support [her] conclusion." *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quotation omitted).

Based on the unique procedural posture and circumstances of this case, including the lengthy delay, the number of remands, and the nature of the remands, the Court finds that remanding for an award of immediate benefits is appropriate.

## CONCLUSION

For the reasons set forth in this order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED** to the Commissioner for an award of immediate benefits to Plaintiff V.L.V.

DATED: September 29, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge